Owen, C. J.
If Elizabeth was provided for by the will of her father, it v'as not revoked by her birth after its execution, and the judgment below should be affirmed. If there was such provision made, it is to be found in these words: “I will and devise to my wife, Harriet Young, all my real estate wherever situate, to use and occupy as to her may seem proper, ■during her natural life, and after her death to the heirs of her body begotten.”
*236 It will not be contended that this is-a specific provision for the plaintiff. If it is a provision at all, it is so because the-language is comprehensive enough to include her. It was-evidently written with a view only to the maternity of the “ heirs of her body begotten,” and without reference to their paternity. It was intended as a comprehensive direction of the course which the property should take after the immediate object of the testator’s bounty should die, unless she should die without issue, in which case, other direction is made in the' will. Much learning and research have been expended in discussing the character of the devise in remainder, and whether it is a vested or contingent interest.
In the view we take of the case, this is wholly immaterial. The question is, has Elizabeth “ been provided for in the will ”' in the sense of the statute. It is not conclusive of this question to say that a “disposition” has been made which may inure to her benefit. “ Disposition ” and “ provision ” are not-necessarily convertible terms.
This statute has not heretofore been construed by this court. The question is not new, however, to the courts of several of the states, and of England.
In Lamplugh v. Lamplugh, 1 Peere Williams, 111, the question was, whether a younger of two sons was provided for in a certain settlement. By that settlement an estate was-settled upon him expectant upon his mother’s death.
The Lord Chancellor held that the younger son was unprovided for, notwithstanding the expectancy settled upon him,, to take effect upon his mother’s death, “ for,” he said, “ the mother might survive the father many years, and in that time the younger son might starve if he were to have no other provision.”
The case of Willard’s estate, 68 Pa. St. 327, is, we think,, directly in point. The Pennsylvania statute, then in force (Brightly’s Purdon’s Digest, 1477), provided that “ when any person shall make his last will ,and testament, and afterwards shall mary or have a child, or children, not provided for in such will, and die, leaving a widow and child, or either a widow or child, or children, although such child or children be born *237 after the death of their father, every such person, so far as shall regard the widow or child, or children after born, shall be deemed and construed to die intestate, and such widow, child or children, shall be entitled to such purparts, shares., and dividends of the estate, real and personal, of the deceased, as if he had actually died without any will.”
In that case, W. W. Willard, the testator, executed his will on the 29th of August, 1864, and died on the 2d of September following, leaving his wife, Catharine E. Willard, enceinte, and two children, Anna C. and Lizzie P. Willard, by a former wife. On the 25th of February, 1865, a little over five months after the death .of the testator, his widow gave birth to a son, Waldo Wickham Willard.
By the first item of his will, the testator gave the interest of three thousand dollars to his mother during her natural life, .and at the death of his mother “this bequest to revert to my children and heirs.” In the second item of his will he gave, among other things, a house and lot, which he valued at seven thousand dollars, to his wife, to be hers during her natural lifetime, and at her decease “ this bequest of seven thousand dollars, to revert to my heirs at law, share and share alike.”
In the opinion of Sharswood, J., it is said, page 330, “It is earnestly contended, that as this child Waldo would certainly be entitled to his equal share of these reversionary interests, he can not be said not to be provided for * * *. Here, however, there was, in effect, no present provision whatever. For all the purposes of education and support, and that for an indefinite period, this son is left entirely dependent upon his mother, unless, indeed, by a sale of his reversionary interest. * * But how could even a vested reversionary interest be a provision, unless by a present sale of such reversionary interest ? A contingent interest could also be sold. An interest may be vested, as in this case, although the period when it shall fall into possession is uncertain. Such an interest could not be sold for the maintenance and education of the minor, except at an enormous sacrifice. Yet, what could an orphan’s court do under such circumstances? Refuse to sell, and throw the child for maintenance and education on the public; or make a scanty *238 provision for a short period, by an immediate sacrifice of all his future estate. We hold, then, that a i'eversionary interest,, whether vested or contingent, is not a provision for an after-born child, within the words or spirit of the statute.”
The question was again before the same court, in Hollingsworth’s Appeal, 51 Pa. St. 518, in which the court held that when “a testator gave all his estate to his wife, and if he should have any children living at his death, he appointed his-wife guardian of such children during their minority, committing entirely(to her affection, judgment and discretion, their-maintenance, education and future provision; and which guardianship I intend and consider as a suitable and proper provision for such child or children; ’ he had no children at the date of the will, but two were born afterwards. Held, that he died intestate as to the children.” Read, J., in delivering the-opinion of the court, said: “This is clearly no provision for his children, such as is contemplated by our wills act, and the-policy of the law.”
The act above mentioned is the same act that was in force-when Walker v. Hall, and the case of Willard’s estate, supra, were decided.
The case of Waterman v. Hawkins, 63 Maine, 156, is also suggestive. By section 8 of the Revised Statutes of 1871, of that state, page 564, it is provided that “ a child of the testator, born after his death, and not provided for in his will, takes-the same share of his estate, as he would if his father had died intestate.” And the question before the court was, whether, in the case under consideration, an after-born child was provided for, within the meaning of the statute.
The case arose out of the will of John P. McGlinchy, who died February 2, 1869, leaving his widow, enceinte, -and his father surviving him. His will was executed January 7th, preceding. A child, Gertrude, was born two months after the testator’s death. By his will the testator gave to his wife-the house, land, and furniture, where they lived, for her natural life, if she remained unmarried, providing, however, that “in case of her marriage the same is to become the-property of my heirs, and its use to revert to them; and, in- *239 any event, after her decease, the same is to descend to my heirs.” All the rest of testator’s property was given to his father. The posthumous child, Gertrude, was the sole heir-at-law of her father.
The real question before the court was, whether a child of a testator, born after his death, can, in any proper sense of the term, be deemed provided for in the will, by a general devise of a reversion to the heirs of the testator ; and the court, all the judges concurring, held, it cannot be deemed so provided for.
Barrows, J.,
in the course of the opinion in that case, says :• “ A general devise of a reversion to the heirs of the testator,, constitutes no such provision. It would rarely be available for the support of the child, when support is most needed ; and while the insufficiency of the provision in the will might not entitle the posthumous child to claim a distributive share, in order to bar him it must definitely appear that some provision relating expressly to him, was made.” We are not required to say that if the child in such case was actually provided for by the execution of the will it must be considered revoked because the provision did not relate expressly to her.
So, a like statute has been recently before the Supreme Court of Massachusetts, in the case of Bowen v. Hoxie, decided September 5, 1884, and published in vol. 18, No. 23, of The Reporter, page 721, (Boston). The testator executed his will, February 28, 1880, and died, December 18, 1882, leaving a widow and six children by her, and three children of a former marriage. A little over three months after the testator’s death another child, Paulina, was born. The testator by his said will, besides other bequests to his wife and nine children,, then living, left the sum of $50,000 in trust, to pay the income to his wife during her life, and after her decease, to pay over the interest and income thereof, annually, in equal shares,, to my surviving children by my said wife Abby Elizabeth, with an ultimate distribution of the principal among them. There was no other provision for Pauline by the will, or otherwise. The Pub. Stat. C., 127, sec. 22 of Mass., provides that “ when a child of a testator, born after his father’s death, has *240 no provision made for him by his father in his will, or otherwise, he shall take the same share of his father’s estate that he would have been entitled to if his father had died intestate.”
It was contended by counsel for the child, Pauline, that there was no provision for her in the will, within the meaning of the statute.
Allen, J.,
in the course of the opinion, says: “ In the opinion of the court, the claim, in behalf of Pauline must be supported. The will would have full effect without regard to Pauline. The share, if any, which she would receive, would come to her only as one of a class. The provision for her is an unintentional one. The most that can be said is, that the provision for a class happens to be broad enough to include her. It does not, under any construction, furnish any certain means for her maintenance and education during that part of her life when she would be unable to do anything toward her own support.
“ She might live long, marry, have children and die, without ever coming into the enjoyment of her share of an interest to which, as one of a class, she might be entitled. Such a result would not only shock the testator himself, but would be contrary to the common feelings of humanity. It is not necessary, and we do not think it is reasonable to hold, that a provision for a class, within which an uncontemplated child happens to fall, excludes the child from a proportionate share of the estate. The statute rather means to include cases where a child, born after the father’s death, has no direct specific or intentional provision made for him.”
“Its meaning is, if a father unintentionally omits to provide, in his will, or otherwise, for a child born after his death, or, in other words, if he omits to make a provision which is intended for such child, the child shall take the same share of estate that he would have been entitled to, if the father had died intestate. This contraction is in accordance with that adopted by the courts of several states, substantially similar.”
A case reported in 10 Ga. pp. 80, 81, 82, is instructive. The Supreme Court, construing a statute of that state, which is much like the Pennsylvania statute, says: “ The statute *241 contemplates the present, or probable existence of the after-born child, in the mind of the testator, when he makes his will, and thereby makes a positive provision for such child. There being no such positive provision made by the testator in his will for this after-born child, we are of the opinion that this is a very clear case of intestacy under the statute.”
In the case at bar there surely was no provision for the present support and maintenance of Elizabeth. It is now nearly twenty-six years since her birth, and there has been no time since that event that she could assert a present interest in the estate left by the will of her father. She has passed from birth to womanhood and is now a wife, and not a penny of this “ provision ” which it is strongly contended was made for her in the will, has enured or could lawfully enure to her benefit.
If it be contended that the devise to her, or which is made in terms broad enough to include her, is a vested interest — one which she could sell and realize therefrom present means — the answer is that she might also sell a contingent interest or a mere expectancy, if in either case she should find an adventurer brave enough to take his chances in an investment so equivocal and unpromising. In that case a sale would probably be at a great sacrifice. She may live to middle age, and even to moderately old age, and still fail to realize upon ■ this alleged “provision,” unless she should in the meantime be unfortunately called upon to mourn her mother’s death. If she should die before her mother, it would result that she had passed through life without realizing the slightest benefit or assistance from the will. These considerations are suggested rather as illustrations of the practical workings of the rule contended for'than as rules or tests of construction. They serve to illustrate, also, the authorities which are above cited.
The able and industrious counsel for defendants have failed to produce a case which tends to cast doubt upon any of these .authorities, or to establish a different doctrine.
2. "We are fortunate, however, in finding in this statute very valuable aid in its construction. In the same section— *242 indeed in the same sentence — we find substantially the same expression which has provoked so much discussion concerning what constitutes a provision in a will for an after-born child. The will shall be deemed revoked “ unless provisions shall have been made for such child by some settlement,” etc. In either case the statute contemplates provision for a child which we are to suppose will be of tender years and in present need of means of support. If there be provisions by settlement or provision by will, in either case (and in the one the same as the another,) the birth of a child after the execution of the will does not work its revocation.
Fortunately for us, “ provisions by some settlement ” is a phrase of easy construction. It certainly implies, if not a sufficient, at least a substantial, present means of maintaining the child. A settlement at once suggests the intervention of trustees upon whom is conferred a fund or property in some form which constitutes a source of maintenance, education, etc. A provision by some settlement which could not become available until the termination of a life tenancy or interest, and which depended upon the contingency of the beneficiary outliving the life-tenant, and which, in case of the latter surviving the former could never and would never be devoted to the uses to which it was appointed, would be a strange absurdity. Lamplugh v. Lamplugh, supra, is directly in point.
When we have ascertained what a provision for a child of tender years by some settlement is, we shall have made good progress in the solution of the question at bar. It would not be a sound proposition to say that the same word occurring in different places in the same statute always means the same' thing. It may sometimes call for a- radically different construction. But where the same word or phrase is used more than on’ce in the same act, especially in the same section and in the same sentence, in relation to the same subject-matter and looking to the same general purpose, it is a fundamental rule of statutory construction that if in one connection the meaning is clear and in the other it is otherwise doubtful or obscure, it is in the latter case to be construed the same as in the former. In Raymond v. Cleveland, 42 Ohio St. 529, it is *243 said: “ Where the meaning of a word or phrase in a statute •is doubtful, but the meaning of the same word or phrase is clear where it is used elsewhere in the same act or an act to which the provision containing the doubtful word, or phrase has reference, the word or phrase in the obscure clause will be held to mean the same thing as in the instances where the meaning is clear.”
It is said in James v. DuBois, 1 Harrison (N. J.), 293: “ It is no doubt a rule of construction, that if a statute makes use of a word in one part of it susceptible of two meanings, and in another part of the statute the same word is used in a definite sense, we are to understand it throughout in that sense, unless the object to which it is applied, or the connection in which it stands, require it to be differently understood in the two places.”
In Pitte v. Shipley, 46 Cal. 160, the court say: “ It is a familiar principle of construction that a word repeatedly used in a statute, will be presumed to bear the same meaning throughout the statute, unless there is something to show that there is another meaning intended.”
This rule is peculiarly applicable to the question at bar. The general subject treated in these two expressions is the same, to-wit: A provision for an after-born child which shall save a will from the revocation which must otherwise result from the birth of such child after the execution of the will. Giving to the word “ provision ” in the one phrase substantially the same construction which the word “ provisions ” is clearly entitled to in the other, and the conclusion is that Elizabeth was not “ provided for in the will ” by the devise of the testator’s lands to his wife to use and occupy as to her may seem proper, during her natural life, and after her death to the heirs of her body begotten; and the judgments below are reversed, and the cause remanded to the circuit court for further proceedings.